# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD SATISH EMRIT,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, INC.,<br><br>　　　　　　　　Defendant. | Case No.: 18cv318-MMA (JLB)<br><br>**ORDER DISMISSING CASE** |

On March 12, 2018, Plaintiff Ronald Satish Emrit ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed an Amended Complaint ("AC") that attempts to assert claims against Defendant Wells Fargo Bank, Inc. Doc. No. 5 ("AC"). The AC suffers from the same deficiencies as the original Complaint, which were identified in the Court's February 14, 2018 Order dismissing with leave to amend his initial Complaint. Doc. No. 4. Because Plaintiff again fails to state a claim for relief, and because the Court determines that further leave to amend would be futile, the Amended Complaint is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e).

## BACKGROUND

Plaintiff brings this action because he "missed the deadlines and/or filing dates for the class action lawsuit against Wells Fargo," which may have settled. AC, ¶¶ 7, 11. Plaintiff alleges that it is "reasonable to conclude that [his Wells Fargo] checking account

1

had its security measures compromised notwithstanding the fact that the plaintiff had closed his Wells Fargo account in 2015 and does not currently have direct evidence and/or trace evidence of the security measures of his checking account having been compromised during the dates specified in the class action lawsuit." AC, ¶ 10.

According to Plaintiff, Defendant's "firewall" was breached and its customers' personal and private information was exposed "so that hackers, spies, cyber-criminals, and white criminals could use this personal and private information fraudulently for their own personal gain." AC, ¶ 21. Plaintiff opened a "Wells Fargo account when it was still Wachovia Bank at a branch in Bowie, MD . . . ." AC, ¶ 22. While there, a branch manager tried to get Plaintiff "to join a multi-level marketing company 'doing business as' (d/b/a) Your Travel Business International (YTBI) in which the plaintiff was to become a 'Referring Travel Agent.'" AC, ¶ 23. Plaintiff alleges a referring travel agent with YTBI is similar to being a "'team trainer' with ACN,[1] which Plaintiff joined in 2007 . . . . ACN . . . is based on the 'pyramid sales' or Amway model which the plaintiff describes as he was being defrauded by a Ponzi scheme . . . ."[2] AC, ¶ 24. Plaintiff ultimately joined YTBI and switched his checking account to "Chase Bank/JP Morgan in the summer of 2015." AC, ¶ 27.

Plaintiff alleges he later attended law school in Miami Gardens, Florida, where he started a "fictitious entity" doing business as Alex Garcia Enterprises, Inc., "which was supposed to buy women's lingerie from wholesale distributors and retail it for a higher price." AC, ¶ 28. Accordingly, he set up a business checking account with First Union Bank "with a rollover/private checking account." AC, ¶ 29. "Prior to that, the plaintiff's grandmother . . . gave [him] $2,00[0] to invest in 1998 in which the plaintiff invested in an Individual Retirement Account (IRA), a mutual fund (through John Hancock Financial

---

[1] Plaintiff does not explain what ACN stands for. *See* AC.
[2] Plaintiff explains he attended an ACN convention in Salt Lake City, Utah, where he stayed at different military bases in Utah. AC, ¶ 25. On his way back from the convention, he also stayed at military bases in Ohio, Kansas, Nebraska, and Maryland. *Id.*

2

in Boston, MA), and a certificate of deposit . . . ." AC, ¶ 30. Plaintiff alleges he invested this money through "a certified financial planner (CFP) with Chevy Chase Bank . . . in Silver Spring, MD." AC, ¶ 31.

Plaintiff summarizes his allegations as follows:

> Summarily, the plaintiff has banked with First Union Bank (in Florida), Wachovia Bank (in Bowie, MD), and Wells Fargo Bank (in Bowie, MD and Las Vegas, NV). As has been explained earlier, First Union Bank became Wachovia Bank which became Wells Fargo Bank (as Wachovia had been acquired by Wells Fargo). While the plaintiff never really had problems with his bank account at First Union or Wachovia, his problems with Wells Fargo began with [a] branch manager . . . "harassing" the plaintiff to join YTB[I] which has already been characterized as a multi-level marketing company using the "pyramid sales" model such as Amway. Because of the fact that the plaintiff has missed the deadline to join the class action lawsuit against Wells Fargo, he argues that he has the standing, causation, and redressability to bring forth these causes of action against Wells Fargo unless the court (in the present case at bar) issues an injunction mandating that he be added to the class action lawsuit against Wells Fargo.

AC, ¶ 35.

Based on the foregoing facts, Plaintiff alleges the following causes of action against Defendant: (1) breach of contract; (2) negligence; (3) tortious interference with business relations/contracts; and (4) intentional infliction of emotional distress. *See* AC.

## SCREENING PURSUANT TO 28 U.S.C. § 1915(E)(2)(B)

When a plaintiff proceeds IFP, the complaint is subject to mandatory screening and the Court must order the *sua sponte* dismissal of any case it finds "frivolous; malicious; fail[ing] to state a claim on which relief may be granted; or see[king] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."). "[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). In addition, the Court has a duty to liberally construe a *pro se* plaintiff's

pleadings. *See id.* In giving liberal interpretation to a *pro se* complaint, however, the court may not "supply essential elements of claims that were not initially pled." *See Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

A complaint should be dismissed for failure to state a claim if, taking all well-pleaded factual allegations as true, it does not contain "enough facts to state a claim to relief that is plausible on its face." *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

As an initial matter, Plaintiff's factual allegations are still "verbose," "confusing," "distracting, ambiguous, and unintelligible," and comprised of "incomprehensible rambling." *See Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (collecting dismissal of cases which did not provide a short and plain statement of the claim showing that the pleader is entitled to relief). For example, Plaintiff explains which air force bases he visited while attending a convention for a ACN and explains that he "believes in the acronym 'COLE WMA' which is the plaintiff's 'code phrase' for 'Concentrate on Leaving Earth With Me Again' and has the last name of the plaintiff's cousin . . . who lives in Highland Beach in Annapolis, MD, i.e. a private beach for freed slaves and abolitionists like Harriet Tubman . . . and Frederick Douglass." AC, ¶¶ 25-26. Additionally, Plaintiff alleges he attended law school in Florida and started a fictitious entity that purchased "women's lingerie from wholesale distributors" and retailed it for a higher price. AC, ¶ 28. He explains his grandmother gave him money to set up a business account, which his financial planner from "Chevy Chase Bank" assisted him with. AC, ¶¶30-31. Plaintiff concludes that "although [he] is not a conspiracy theorist, he would like to point out that First Union Bank reminds him of the 'Former Soviet Union' which has the same acronym as Florida State University . . . ."

AC, ¶ 34. Plaintiff's new allegations are similarly comprised of incomprehensible rambling. *See Cafaso*, 637 F.3d at 1058-59. He requests the Court judicially notice that he "is a candidate for president of the United States in the 2020 election and was also a candidate in the 2016 election . . . ." AC, ¶ 1. As such, Plaintiff requests the Court judicially notice "that the plaintiff wants to be seen as being 'tough' against the commercial and investment banks on Wall Street . . . ." AC, ¶ 2. Plaintiff explains that "he views his civic duty is to use PACER, CM/ECF, and the pro se/IFP process to communicate paranormal 'signals intelligence' (SIGINT) necessarily involving his own 'human intelligence' (HUMINT) as an intelligence subject with Project MKUltra carried about by the Central Intelligence Agency (CIA) . . . ." AC, ¶ 5. He states "that he is communicating signals intelligence (SIGINT) to the . . . CIA, NSA, FBI, DIA, NRO, NGA, and U.S. Naval Intelligence." AC, ¶ 6. These allegations have no bearing on Plaintiff's underlying causes of action.

Moreover, Plaintiff's causes of action suffer from several defects. For each cause of action he states Defendant is liable because it allowed millions of its account holders "to have their private account information hacked into and exposed . . . ." AC, ¶¶ 38, 41, 43, 45. Beyond that, Plaintiff merely recites the elements for breach of contract, negligence, tortious interference with business relations/contracts, and intentional infliction of emotional distress. AC, ¶¶ 36-45. For example, his breach of contract cause of action states in a conclusory fashion that "[i]t is a material breach of contract for the defendant Wells Fargo Bank to allow millions of its account holders . . . to have their private account information hacked into and exposed . . . ." AC, ¶ 38. However, Plaintiff does not even allege the existence of a contract. AC, ¶¶ 36-39. Even further, each of Plaintiff's causes of action are state law claims, but the Court has insufficient information to determine which State's laws apply. *See generally*, AC (listing conduct occurring in Maryland, Utah, Nebraska, Ohio, Florida, Massachusetts, and Virginia). Plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

The Court noted these deficiencies in its February 14, 2018 order dismissing Plaintiff's initial complaint, but provided him leave to amend. *See* Doc. No. 4. Plaintiff failed to cure these deficiencies in his AC. *See* AC. Accordingly, the Court finds Plaintiff has failed to state a claim upon which relief may be granted and also finds that any attempt to amend would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (a district court may deny leave to amend for, among other reasons, "repeated failure to cure deficiencies by amendments previously allowed . . .[and] futility of amendment").

## CONCLUSION

In light of the foregoing, the Court **DISMISSES** Plaintiff's Amended Complaint with prejudice. The Clerk of Court is instructed to close this case and to enter judgment accordingly.

Dated: March 21, 2018

*[signature]*
Hon. Michael M. Anello
United States District Judge